# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1582

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FRANCISCO J. BERMEA-BOONE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:04-cr-00672-2—**Harry D. Leinenweber**, *Judge.*

ARGUED FEBRUARY 26, 2009—DECIDED APRIL 23, 2009

Before BAUER, KANNE and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Francisco Javier Bermea-Boone was convicted of conspiring to possess with intent to distribute and to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; and attempting to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The district court sentenced him to 204 months' imprisonment. On appeal, Bermea-Boone challenges his conviction and sentence, claiming that the district court erred by: (1) denying his motion

for a mistrial after the jury heard allegedly prejudicial hearsay comments; and (2) applying a two-level sentence enhancement for obstruction of justice. For the following reasons, we affirm.

## I. BACKGROUND

In July 2004, Bermea-Boone arranged for a large quantity of cocaine to be driven to Chicago by truck driver Juan Garcia. On July 25, 2004, Garcia was traveling on Interstate 44 in Missouri en route to his destination when he encountered a series of signs that read, "checkpoint ahead" and "drug dogs in use." Phelps County Deputy Sheriff David Rightnowar observed Garcia's truck exit the interstate after passing these signs. As Garcia reached the exit ramp, he ran a stop sign, turned the truck around, and merged back onto the interstate traveling in the opposite direction. Garcia's curious actions and traffic violation prompted Rightnowar to stop the vehicle. Following a brief conversation, Garcia consented to the search of his truck. Aided by the use of a drug-detecting dog, Rightnowar and another officer discovered fifty-six bundles of cocaine under the truck's sleeper bunk. After being placed under arrest and advised of his rights, Garcia agreed to cooperate with the officers in a controlled delivery of the cocaine.

The following day, under the supervision of officers, Garcia placed a recorded call to Bermea-Boone and arranged to deliver the cocaine near a Burger King restaurant off Interstate 57 in Monee, Illinois. During the call, the men made several references to "the ladies." Later, at trial, Robert Coleman, a law enforcement expert in narcotics

trafficking, explained how cocaine dealers commonly use words like "ladies" to describe cocaine in order to avoid detection.

Before Garcia departed, officers fitted him with a body recording apparatus known as a "Kel" device and replaced the seized cocaine with "sham" cocaine. By early that evening, Garcia and Bermea-Boone had arrived at the Burger King parking lot. Unbeknownst to Bermea-Boone, officers were also in attendance, positioned to monitor the planned transaction.

Bermea-Boone was accompanied by three other men; they arrived in two cars: a green Dodge and a grey Nissan. Detective Richard J. Sperando saw Bermea-Boone exit the Dodge with a man later identified as Orlando Martinez Navarro. The men met Garcia in the parking lot and they entered the restaurant together. Officers then observed a man later identified as Francisco Morales-Cabrera get out of the Nissan and enter the Burger King; another man, later identified as Abel Gutierrez-Jiminez, remained in the car.

Inside the restaurant, Bermea-Boone told Garcia that someone would follow Garcia to the truck to make the transfer of the bundles of cocaine. Moments later, Garcia and Morales-Cabrera left the restaurant together. Garcia walked to his truck and stood by the passenger door. After Morales-Cabrera got in the Nissan, Gutierrez-Jiminez drove the car closer to the passenger side of the truck. There, Garcia handed Gutierrez-Jiminez three large bags containing the "sham" cocaine, which Gutierrez-Jiminez began putting inside the car's trunk. As he did, the officers approached and arrested all five men.

At trial, a Verizon Wireless representative testified that between July 24 and July 26, 2004, seventeen telephone calls took place between the cellular numbers of Bermea-Boone and Garcia. A Drug Enforcement Agent (DEA) was called to testify regarding his role in supervising telephone calls sent and received by Garcia. Bermea-Boone also testified at trial. According to his version of events, he was driving to Chicago with Martinez Navarro and Garcia to purchase pickup trucks for a new business.

The jury found Bermea-Boone guilty, and the district court sentenced him to 204 months' imprisonment, which included a two-level sentence enhancement for obstruction of justice.

## II. DISCUSSION

Bermea-Boone makes two arguments on appeal: (1) that the district court erred in denying his motion for a mistrial after the jury was prejudiced by improper hearsay comments; and (2) that the district court erred in finding that Bermea-Boone obstructed justice by providing perjured testimony, which resulted in a two-level enhancement of his sentence. We address them in turn.

### A. Mistrial

We begin with Bermea-Boone's contention that the district court should have granted a mistrial after the jury was allowed to hear several statements concerning the cocaine transaction that were attributed to Garcia.

Although Garcia initially agreed to cooperate with the government, he later reversed course and decided against it, making him unavailable as a witness for the prosecution. Bermea-Boone takes issue with three statements attributed to Garcia and argues that each constituted a violation under *Crawford v. Washington*, 541 U.S. 36 (2004), because they were testimonial statements made by an out-of-court declarant who was unavailable for cross-examination.

We review the district court's denial of a motion for a mistrial for an abuse of discretion. *United States v. Prieto*, 549 F.3d 513, 521 (7th. Cir. 2008). "Our review is highly deferential because the trial judge is in the best position to determine the seriousness of the incident in question, particularly as it relates to what has transpired in the course of the trial." *United States v. Danford*, 435 F.3d 682, 686 (7th Cir. 2006) (internal quotation marks and citation omitted). The essential inquiry is whether Bermea-Boone was deprived of a fair trial. *Id.*

"*Crawford* addressed the admission of testimonial hearsay in criminal trials, holding that the Sixth Amendment's Confrontation Clause bars the admission of such testimonial statements unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination." *United States v. Tolliver*, 454 F.3d 660, 664-65 (7th Cir. 2006).

The first statement challenged by Bermea-Boone is contained in the testimony of DEA agent Robert A. Rodriguez, who testified regarding his role in supervising

telephone calls sent and received by Garcia. To explain how the DEA monitored the telephone call that Garcia placed to Bermea-Boone to arrange the delivery of cocaine, Rodriguez discussed what Garcia had told him. Rodriguez stated, "At approximately 2:45 p.m. that afternoon outside of the Peotone Police Department, I observed Garcia place a phone call to an individual, he said to Mr. Bermea-Boone, Javier Boone, he said"—at this point defense counsel objected.

The district court immediately ordered that the statement be stricken from the record; Bermea-Boone moved for a mistrial. The district court denied the motion, but twice admonished the jury to disregard the statement, first while Rodriguez was on the witness stand, and again at the conclusion of the trial.

Bermea-Boone contends that the statement so prejudiced his trial that a mistrial was required and the district court's refusal to do so was an abuse of discretion.

Absent a showing to the contrary, this Court presumes that the jury limited its consideration of testimony in accordance with the trial court's instruction. *United States v. Mallet*, 496 F.3d 798, 802 (7th Cir. 2007). Here, although the statement was improper, it was immediately treated as such by the district court. The jury was instructed, not once, but twice, to disregard Rodriguez' brief mention of Garcia. We have no reason to question the jury's ability to follow the limiting instructions. In our view, it is clear that whatever the error, it was cured by the district court, and the court properly denied Bermea-Boone's motion for a mistrial.

Bermea-Boone also argues that his right to confront the witnesses against him was violated when the district court admitted transcripts produced from the tape recordings of two conversations involving Bermea-Boone and Garcia when Garcia was not available for cross-examination.

Before trial, the government filed motions in limine seeking to introduce two conversations involving Bermea-Boone on the grounds that the statements were in furtherance of the conspiracy and were his own admissions. The government argued that the conversations, which also involved Garcia, were not hearsay and were admissible for context. Over Bermea-Boone's objection, the district court admitted the transcripts of two recorded conversations: a telephone conversation between Bermea-Boone and Garcia on July 26, 2004; and the in-person conversation among Bermea-Boone, Garcia, and another co-conspirator captured by the Kel device during the drug delivery. Each conversation had been translated from Spanish to English. During trial, the district court again overruled Bermea-Boone's *Crawford* objections to the admission of the transcripts.

Defense counsel then moved for a mistrial. The district court denied the motion and cautioned the jury:

> Ladies and gentlemen, the statements that are being made are alleged to have been made by Mr. Garcia and Mr. Navarro [sic] and are not being offered for the truth. For example, anything they said in there is [sic] not facts that you should consider when determining the issues in the case. What they're being offered for is to provide context so that the statements

alleged to have been made by Mr. Bermea-Boone, the defendant, so that you can understand why the statements—what they meant.

Bermea-Boone claims on appeal that each of the statements were *Crawford* violations; he argues that the district court's failure to keep out the prejudicial statements or grant a mistrial after the jury had heard them amounted to an abuse of discretion. We disagree. *Crawford* only covers testimonial statements offered to establish the truth of the matter asserted. *Tolliver*, 454 F.3d at 666. Here, Garcia's statements were not offered for their truth, but to provide context for Bermea-Boone's admissions concerning the drug conspiracy and to make those admissions intelligible for the jury. "It is well-settled that statements that are offered for context, and not for the truth of the matter asserted, are not hearsay as defined in Rule 801 of the Federal Rules of Evidence." *United States v. Macari*, 453 F.3d 926, 941 (7th Cir. 2006). Where there is no hearsay, the concerns addressed in *Crawford* do not come in to play. That is, the declarant, Garcia, did not function as a witness against the accused and the admission of his statements did not offend the Confrontation Clause. See *Tolliver*, 454 F.3d at 666.

**B. Sentence Enhancement**

Finally, Bermea-Boone argues that there was insufficient evidence for the district court to apply a two-level enhancement to his sentence for obstruction of justice. Whether Bermea-Boone obstructed justice is a factual determination that enjoys a presumption of correctness

under the clearly erroneous standard. *United States v. Hickok*, 77 F.3d 992, 1006 (7th Cir. 1996) If a sentencing court finds, by a preponderance of the evidence, that the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense," it is permitted under the Sentencing Guidelines to enhance a defendant's offense level by two points. *Id*. (quoting USSG § 3C1.1). It is well-settled that perjury is an example of conduct that warrants an enhancement for obstruction of justice. *Id*. One commits perjury if, while under oath, he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* at 1007 (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)).

The district court found that Bermea-Boone perjured himself by providing false testimony at trial, but Bermea-Boone argues that there was insufficient evidence to conclude that he did so willfully. He contends that his statements denying knowledge of the presence of cocaine in the truck and participation in the drug conspiracy can be attributed to a "muddled" recollection of events.

Bermea-Boone testified that he was a retired bus driver who traveled to Chicago to buy pick-up trucks; Garcia came along on the trip to help him in this pursuit. If these claims seem to strain reason, the in-court explanations that Bermea-Boone gave for his incriminating cellular telephone records openly defy it. The record revealed a series of calls made to Garcia's phone on the date of his arrest and the days preceding it. According to Bermea-

Boone, these calls to Garcia were not made to arrange the logistics of the cocaine transaction, but "just to see how he was doing, how things were going for him." As explanation for the fact that his phone was not registered in his own name, Bermea-Boone stated that his friends in Atlanta acquired it for him at a special rate. Moreover, Bermea-Boone claimed that he lived in Mexico, yet his cellular telephone records did not reveal one call made from Mexico during the month prior to his arrest.

It is true that not every instance of false testimony under oath warrants an obstruction-of-justice enhancement. *United States v. Ellis*, 548 F.3d 539, 545 (7th Cir. 2008). A simple denial of guilt, for instance, cannot serve as the basis for such. *Hickok*, 77 F.3d at 1007. Bermea-Boone's fanciful "recollection" of events, however, went well-beyond mere denial of guilt; rather, he provided elaborate, detailed, and deliberate mistruths concerning material facts of the drug conspiracy. Bermea-Boone's testimony was material because it went to the heart of the question before the jury: whether he knowingly participated in the drug conspiracy and attempted to possess with intent to distribute more than five kilograms of cocaine.

Moreover, his false statements cannot be explained away by a "muddled" memory of events. Bermea-Boone testified that it was "in no way, no way" his voice on either tape recording introduced at trial. In convicting Bermea-Boone, the jury clearly believed that it was. Bermea-Boone's attestations to the contrary were lies. Having determined that Bermea-Boone willfully gave false testimony, the district court applied the obstruction of justice enhancement. There is no clear error in this decision.

For the reasons set forth above, we AFFIRM Bermea-Boone's conviction and sentence.