NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0270n.06

No. 24-1761

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| RANDY SCOTT RADER, | ) |
| Defendant-Appellant. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: GRIFFIN, LARSEN, and MATHIS, Circuit Judges.

GRIFFIN, Circuit Judge.

After defendant Randy Rader violated his supervised-release conditions by testing positive for cocaine and failing to reside at a residential reentry center for four months, the district court revoked his supervised release and sentenced him to a below-Guidelines term of imprisonment. Rader now appeals the sufficiency of the evidence supporting the violations and the resulting sentence. We affirm.

I.

Rader pleaded guilty to distributing cocaine and cocaine base and possessing a firearm in furtherance of a drug-trafficking crime. For these crimes, the district court sentenced him to 240 months' imprisonment followed by eight years of supervised release. Shortly after Rader began supervised release, he admitted to using controlled substances, including cocaine, on two separate occasions, so the district court twice revoked his supervised release, sentenced him to brief periods

of incarceration, and ordered him to participate in additional terms of supervised release. After the second revocation and re-imposition of supervised release, the district court imposed a special condition that Rader reside at a residential reentry center (RRC) for four months.

When Rader first began living at the RRC, he stayed only a few weeks because he continually tested positive for marijuana, in violation of the RRC's policies. The district court then issued an order for his re-admission to the RRC, clarifying that the center need not test him for marijuana unless the center deemed it necessary.

A few weeks later, Rader arrived at the RRC to serve his four months. However, due to Rader's "combative" and "disrupt[ive]" behavior, the RRC refused to admit him. According to the center's staff, Rader arrived with several personal belongings—many of which were likely prohibited—strewn "all over the place" and blocking the check-in area. His belongings impeded staff from breathalyzing and searching incoming residents and thus "pose[d] a security issue." And when the RRC's program manager informed Rader that he was subject to the same check-in procedures as other residents, including a urine test for marijuana, he "raised his voice" and claimed to be exempt from marijuana testing. Because the situation got "a little out of control" and caused "commotion with other residents," RRC staff decided not to admit him that day. Rader thus gathered his belongings and left the facility.

Three weeks after the RRC incident, Rader participated in a routine urine analysis as part of his supervised release; his urine preliminarily tested positive for cocaine, among other substances. The probation office then sent the sample to a toxicology laboratory, which confirmed the results of the preliminary testing. Despite these results, Rader denied using cocaine, opining that the positive result "c[a]me from some trace [of] something," like a joint he had smoked "or a piece of money" he had handled.

Based on Rader's failure to reside at the RRC and use of controlled substances, Rader's probation officer notified the court of these two potential supervised-release violations. The district court held a three-days-long violation hearing where it heard testimony from the RRC's program manager, Rader's probation officers, and Rader himself. After the hearing, the court concluded by a preponderance of the evidence that Rader committed both violations. It then revoked his supervised release and calculated his Guidelines range at 8–14 months on the RRC violation and 21–27 months on the controlled-substances violation. Varying downward considerably, the district court sentenced Rader to four months' imprisonment for failing to reside at the RRC and six months' imprisonment for using controlled substances, for a total of ten months' imprisonment with no supervised release to follow. Rader timely appealed.

## II.

### A.

A district court may revoke a supervised-release term upon finding by a preponderance of the evidence that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3). We review a district court's revocation of supervised release for an abuse of discretion. *United States v. Kontrol*, 554 F.3d 1089, 1091 (6th Cir. 2009). In doing so, we review the district court's legal conclusions de novo and its factual findings for clear error. *Id.* at 1091–92.

### B.

Rader first argues that insufficient evidence supported the district court's finding that he violated the special condition requiring him to spend four months at an RRC. We disagree.

It is undisputed that Rader did not reside at an RRC for four months. However, Rader contends that he did not knowingly or willfully violate the district court's special condition because

he reported to the RRC with the intent to serve his four-month term. Regardless of whether this condition implicitly contained, or needed to contain, such a mens rea requirement, *see United States v. De Leon*, 810 F. App'x 384, 388–89 (6th Cir. 2020); *United States v. Smith*, 695 F. App'x 854, 858 (6th Cir. 2017), the district court did not clearly err in finding that Rader knowingly violated this condition. When the district court imposed the RRC special condition, it twice warned Rader that if he failed to comply with the RRC's rules, he would spend four months in prison. Although Rader had a short stint at the RRC, he did not complete his stay due to his marijuana use. Yet the district court gave him one more chance, warning him again that failing to complete his four months at the RRC would result in prison time. Thus, the district court appropriately concluded at the violation hearing that Rader "was on notice of his responsibility to comply with all the RRC rules."

Nor did the district court clearly err in finding that Rader was the cause of the disruption at the RRC, leading to his inability to be admitted to the facility. Notably, Rader had successfully checked into the RRC only two months prior, so he knew how to appropriately check in without causing commotion. This time, however, Rader's belongings prevented RRC staff from performing their check-in duties, and he became "combative" when attempting to check in. And Rader "raised his voice" and claimed to be exempt from certain admissions procedures despite being notified that he was subject to the same procedures as everyone else. Therefore, the district court more than reasonably concluded that Rader knew he was "to be cooperative" at the RRC, not "combative" or "disruptive."

Accordingly, the court did not abuse its discretion in finding by a preponderance of the evidence that Rader violated the special condition of his supervised release.

C.

Rader also argues that the evidence did not support the district court's finding that he violated a standard condition of his supervised release—that he refrain from using controlled substances, particularly cocaine. Again, we disagree.

As Rader acknowledged at the violation hearing, he has a history of cocaine use. Indeed, his underlying crimes involved cocaine. And prior to the instant supervised-release violations, he had already violated this same condition once before after testing positive for cocaine. Given Rader's drug-use history, the district court rightfully opined that the instant violation "wouldn't be the type of situation where it would seem to be some kind of mistake or an unusual occurrence."

Although Rader denies using the cocaine that triggered the present violation, the record belies that assertion. As a probation officer testified, Rader provided a urine sample in the officer's presence, which preliminarily tested positive for cocaine. That probation officer immediately sent the sample to the toxicology laboratory, which confirmed the presence of cocaine in the sample. And the laboratory director's affidavit, which the district court admitted into evidence, detailed the laboratory's testing procedures and once again confirmed that Rader's sample contained cocaine. In short, the district court did not clearly err by crediting the test results over Rader's unsupported statement that he inadvertently ingested cocaine.

Rader's arguments to the contrary do not move the needle. He claims that the laboratory director's affidavit was unreliable hearsay, but supervised-release-revocation hearings "are more flexible than a criminal trial," and at such hearings, district courts "may consider hearsay if it is proven to be reliable." *See United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991); *see also United States v. Lofton*, 810 F. App'x 436, 438 (6th Cir. 2020) ("Defendants in supervised release revocation hearings do not enjoy the same procedural and evidentiary protections as at

trial."). Because the affidavit here—made under oath and "replete with detail"—was sufficiently reliable, the district court appropriately relied upon it. *See United States v. Kokoski*, 435 F. App'x 472, 474 (6th Cir. 2011) (citation omitted). Further, Rader's argument that he needed to test positive for controlled substances three times in one year before the district court could properly revoke his supervised release is contrary to plain language of the supervised-release statute: the three-positive-tests rule applies only when the district court revokes supervised release under the *mandatory*-revocation provisions, *see* 18 U.S.C. § 3583(g)(4), not the *discretionary*-revocation provisions the district court used here, *see id.* § 3583(e)(3).

For these reasons, the district court did not abuse its discretion in finding by a preponderance of the evidence that Rader used cocaine and consequently violated the conditions of his supervised release.

## III.

### A.

Upon revoking a term of supervised release, a district court may impose a new term of imprisonment for the violation. 18 U.S.C. § 3583(e)(3). We review such sentences "under the same abuse of discretion standard that we apply to sentences imposed following conviction." *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008) (citation omitted). Under this standard, we review the district court's sentence for both procedural and substantive reasonableness. *Id.*

### B.

For a court's sentence to be procedurally reasonable, the court must "properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that

are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). To preserve a procedural-reasonableness challenge for appeal, the defendant must object in the district court; otherwise, we review the procedural argument for plain error. *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc).

Rader contends that his sentence is procedurally unreasonable because the district court should have considered placing him in a substance-abuse program rather than prison. *See* 18 U.S.C. § 3583(d). Because Rader failed to object to the district court's sentence on this basis, plain-error review applies. The district court did not err, let alone plainly err, in imposing Rader's sentence. It properly calculated his advisory Guidelines range, considered the § 3553(a) factors, relied on permissible facts, and explained the chosen sentence. And although Rader argues that the district court should have placed him in a substance-abuse program rather than in prison, the record reveals that the district court gave Rader several chances to complete supervised release—despite multiple violations—before ultimately imposing the below-Guidelines term of imprisonment. In fact, the district court tried to facilitate Rader's successful re-integration into society and ease his substance-abuse issues by ordering him to spend time at an RRC. But Rader violated that order. Based on Rader's multiple failures to comply with the terms of his supervised release, the district court determined that prison was the appropriate sentence, and it did not plainly err in making that determination.[1]

---

[1]Rader also contends that "the law of the case" supported no more than a total sentence of four months. But he fails to support this single-sentence argument with any authority; it thus fails under plain-error review. *See United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) ("A lack of binding case law that answers the question presented will . . . preclude our finding of plain error.").

C.

"Substantive reasonableness, when challenged by a defendant, concerns whether a sentence is too long." *United States v. Johnson*, 95 F.4th 404, 418 (6th Cir. 2024) (internal quotation marks omitted). When assessing the substantive reasonableness of a sentence, we must consider whether the district court placed too much weight on some of the § 3553(a) factors and too little on others. *Id.* Because a within-Guidelines sentence is presumptively reasonable, a defendant's burden of demonstrating that his below-Guidelines sentence "is unreasonably long is even more demanding." *Id.* (citation omitted).

Rader has not met this demanding burden. As explained, the district court appropriately considered the § 3553(a) factors and determined that a total 10-month term of imprisonment for both violations—a term substantially below the advisory Guidelines range—was sufficient but not greater than necessary. While Rader argues that the district court "should have been bound" by its statements that it would impose a four-month sentence if he failed to spend four months at the RRC, the district court did just that. As promised, the district court sentenced Rader to four months on that violation. That it added another six months on an additional violation does not make his sentence substantively unreasonable. In essence, Rader asks us to re-balance the § 3553(a) factors to impose a shorter sentence. But doing so "is simply beyond the scope of our appellate review." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006). Thus, the district court did not abuse its discretion in imposing Rader's substantively reasonable sentence.

IV.

We affirm the judgment of the district court.